Coleman v. The K. C., St. J. & C. B. Ry. Co.

MARY E. COLEMAN, Respondent, v. THE KANSAS CITY,
ST. JOSEPH AND COUNCIL BLUFFS RAILROAD
COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1889.

1. Water Course: OBSTRUCTION BY OLD PILING OF BRIDGE: UNPREC-
EDENTED STORM: NEGLIGENCE CONCURRING WITH THE ACT OF GOD,
EFFICIENT, NOT SOLE CAUSE: MISLEADING INSTRUCTION.  In an action
to recover damages for flooding plaintiff's land alleged to have
been caused by negligently leaving high stubs of the piling of a
removed bridge in the channel of the creek and negligently leaving
the chord of the substituted truss bridge too low, thereby catching
the drift, choking the channel and causing the overflow, where
the evidence showed that the overflow followed an unprecedented
storm and rainfall in very brief space of time, it was misleading to
instruct the jury to find for plaintiff, notwithstanding the storm
may have been unprecedented, if they believed that defendant's
negligence concurred and combined with said extraordinary storm
in causing plaintiff's injury.  When the act of God is the cause of
a loss, it is not enough to show that defendant has been guilty of
negligence, the case must go further and show that such negligence
was an active agent in bringing about the loss, without which
agency the loss would not have occurred.

2. ———: ———: NON-LIABILITY FOR EXTRAORDINARY STORMS: NATURE
OF NEGLIGENCE SHOULD BE SET OUT IN INSTRUCTIONS.  Defendant is
not liable for loss resulting from extraordinary floods—those unex-
pected visitations whose comings are not foreshadowed by the
usual course of nature, and must be laid to the account of Provi-
dence, whose dealings, though they may affect, wrong no one; and
its act can only be made a negligent act by comparison with its
duty before the storm; and if it exercised ordinary prudence and
care in replacing its bridge, considering the character and nature
of the stream, the lay of the territory, which it drained, and
of the ordinary storms which occur in that vicinity, it has not been
guilty of that character of negligence which is held to bring about
a liability by commingling with the act of God, and the instruc-
tions should inform the jury of the nature of the concurring negli-
gence which would render defendant liable, and the important
question to be submitted to the jury by the instructions on this
part of the case is, not so much, whether the water and drift
which passed down the stream, was obstructed by the piling, but
would the piling have obstructed the water and drift of an ordinary
storm such as occurs in that vicinity so as to cause the overflow
and consequent destruction.

3.  **Effect of Subsequent Levees Causing Inflow of Additional Waters.** As the evidence tended to show that since the construction of the defendant's bridge the building of certain levees perhaps diverted into the stream, in a body, water which would have had other outlets, or spread over adjacent territory, and as defendant can not be held to have foreseen this nor liable for damage caused by such additional inflow, such question should be submitted to the jury in an appropriate instruction; as also the question whether such additional inflow so increased the volume of water that thereby the stream became dammed and choked up by drift catching onto the bridge proper, in which event defendant would not be liable.

4.  ————: INSTRUCTIONS AND EVIDENCE CONSIDERED. Instructions, given and refused, are set out in the statement and their merits and demerits are discussed and pointed out in the opinion; and after a consideration of the evidence the court concludes with hesitancy that there was enough evidence to take the opinion of the jury on the questions, whether, notwithstanding the overflow caused by the railroad bridge, plaintiff's crops would not have been destroyed by the overflow, caused solely by the drift above; and whether the severity and suddenness of the storm and the body of the water would not have overcome the capacity of the stream and destroyed the crops, even though the obstruction at the bridge had not occurred.

*Appeal from the Buchanan Circuit Court.*—Hon. Vinton Pike, Special Judge.

REVERSED AND REMANDED.

Statement by the court.

This is an action to recover damages from defendant for obstructing a natural water course, whereby plaintiff's lands were flooded and her crops destroyed. The petition was in two counts, but as the court instructed the jury to find for defendant on the second, it will only be necessary to notice the first. In order to a better understanding of the matters of complaint the material portion of that count and answer thereto will be set out, viz. :

"That said stream of water runs through a heavily timbered country, and constantly washes logs, drift

brush and other rubbish down its channel, and that the closeness of the piles of said bridge, which were driven in the bed of said stream, diagonally across said stream, prevented said rubbish, etc., from flowing freely through, and caused an accumulation of logs, drift, brush, mud and other rubbish in the bed of said stream, raising the bottom thereto to the height of six feet above the original bed thereof under said bridge.

"That defendant, in the year 1877, constructed a truss bridge across said stream at the site of and in lieu of the old bridge, and drove other rows of piling in the bed of said stream for the support of said new bridge, at a different angle to the current from that made by the piles of the old bridge, but negligently and carelessly constructed said truss bridge so low and its spans so near together that the waterway was thereby much diminished and rendered insufficient for the passage of the water, logs, drift and rubbish which passed down said stream.

" That shortly after building said new bridge said defendant cut off the piles of the old bridge even with the top of the rubbish so aforesaid deposited, and afterwards the action of the water of said stream lowered the bed thereof about five feet under said truss bridge, leaving the said waterway still too small and insufficient for the passage of the water, rubbish and dirt thereunder ; and said defendant also carelessly and negligently permitted said old piling to remain so projecting above the bed of said stream and so permitted it to remain until after the injuries hereinafter complained of.

"That by reason of said negligent act of defendant in the construction of said truss bridge, and its negligent failure to remove or further cut down said old piles, the drift, logs, brush, and other rubbish in said stream accumulated against the piling of said old and new bridges and against said bridge so as to greatly dam up and impede the passage of water under the said bridge.

"That said accumulation of rubbish, piling and logs, though known to defendant, was carelessly and negligently allowed to remain in such condition till about the ———— day of ————, when by reason of such negligent construction of said truss bridge and said negligent retention of said pilings of the old bridge, and said negligence in not removing the said accumulation of logs and rubbish aforesaid, said stream was dammed up, and caused to overflow its banks and flow over and upon the following lands, to-wit: The northeast quarter of sections two and three, northwest quarter of section two, all in township fifty-four, of range thirty-seven, in Platte county, Missouri, and deposited mud, sand, brush, logs and other rubbish thereon, and washed gullies through the same.

"That at said last-mentioned date the plaintiff was in possession of said lands as lessee of the owner, and said overflow was so caused, destroyed forty acres of wheat thereon of the value of two hundred and fifty dollars ($250), and twenty-five acres of corn of the value of two hundred and twenty-five dollars ($225), the property of plaintiff to her damage the sum of four hundred and seventy-five dollars, for which sum she asks judgment."

Defendant, for answer and defense to said count, stated: "That Sugar creek is a small stream some ten miles in length, running through the hilly, rolling country lying east of defendant's road, and flowing down to and, for about one mile, through the bottom lands of the Missouri river, into the lake commonly known as Sugar lake; that said stream leaves the hills and first enters the bottom lands of the Missouri river at a point about one half-mile above where it is crossed by the track of this defendant; that in the high rolling land lying east of the defendant's track, the water of the stream is confined within its bed or channel by the conformation of the ground, which bed or channel has a

very rapid fall or descent, thereby enabling the waters falling on the lands adjacent to said stream to rapidly escape into and flow through the same, down to said bottom lands, that said bottom lands are very nearly level, having only a slight fall towards the Missouri river, and the bed or channel of said stream, in said bottom lands, has very little, if any, fall, in consequence of which, and of the crookedness of said channel, the waters of said stream are greatly retarded in their passage through said bottom lands to said lake; that the rain falling upon the high rolling lands east of said track is and was, by the formation of the ground, precipitated rapidly down the hillsides, into the channel, in said rolling lands, and flows with great rapidity down said channel to said bottom lands, where in consequence of the insufficiency of said channel to drain and carry off the waters flowing through the channel in the hills down to the same, and of the fact that said channel was crooked and had scarcely any fall in passing through said bottom, said waters, at all times of heavy rains, were retarded in their flow and were forced out of, and flowed over, the banks of said creek, out, onto and over, and escaped across the adjacent bottom lands, including the lands described in the petition herein."

"Defendant says that the rain storm, mentioned in the first count of plaintiff's second amended petition, was of a most unusual and extraordinary character; and that in consequence of the extraordinary quantity of water falling during said storm, of the insufficient size and capacity of the bed or channel of said stream through said bottom lands as aforesaid, and its inability to hold, drain and carry off the waters flowing down in the bed or channel in the high rolling lands, said waters of said stream, upon reaching in their flow such inadequate, unsuitable and insufficient channel in said bottom lands, were, by reason of their extraordinary quantity,

and of the crookedness and insufficiency of the channel of said stream, forced out of and caused to flow onto and over the lands adjacent thereto, including the lands of this plaintiff, without any fault or want of due and proper care on the part of this defendant, its servants or agents thereto in any wise contributing."

The following instructions were given for plaintiff:

"5. If the jury believe from the evidence that the pilings in question were, on June 3, 1885, serving no necessary purpose to the defendant in maintaining its then existing bridge, and that they had never served any useful purpose to such bridge, but were left there by the defendant when the old pile bridge they supported was taken down, and were neither cut entirely down nor removed, but left sticking up in said stream under said new bridge, and so existed on said June 3, 1885; and that on said last date these old stubs obstructed the free passage of drift and water through and under said bridge, and that such stubs did catch and hold such drift, and so dammed up said stream at and above said bridge during a storm of that date that the waters of said stream were forced to and did overflow upon plaintiff's said land; then the jury will find for the plaintiff and assess her damages on the first count of the petition at such sum as the evidence shows she has been damaged by said overflow, not exceeding $675.00; although they may further believe from the evidence that said storm was one of great and unusual violence.

"2. Should the jury believe from the evidence that the storm of June 3, 1885, was an extraordinary storm, still if they further believe from the evidence that the defendant was guilty of negligence in leaving the old piles under the railroad bridge, and that this negligence of defendant concurred and combined with said extraordinary storm in causing plaintiff's injury, then the

jury are instructed that such storm will not defeat the plaintiff's recovery, and they will find for the plaintiff."

"7.    The court instructs the jury that the defendant was required so to keep and maintain the stream at the point where it crossed the same with its road, in such condition as to afford an outlet for all water and drift that might reasonably be expected to flow through, and this must be with reference to such floods or freshets as might reasonably have been expected, after a careful inspection of the size of the stream, the width of its bottom, the height of its banks, its capacity for carrying off the waters, and the surface of the country contributing to its flow, and if the defendant failed so to do it is liable in damages to the plaintiff, if the jury find she has sustained any in consequence of such failure."

The court on its own motion gave the following instructions to the jury :

"8.    If the jury find from the evidence that the natural channel or bed of Sugar creek was too small to hold, drain and carry off the waters falling and flowing down to the same during the storms mentioned in the petition, and in consequence thereof, and not by reason of any obstruction under defendant's bridge, such waters escaped out and flowed down onto, and over, and destroyed said crops, your verdict must be for the defendant."

"9.    If the jury find that the damages to the plaintiff's crops were caused by reason of the fact that the bottom chord of said bridge was so low that logs, trees and other drift were stopped at said bridge, and caught and lodged against the chord of the same, thereby damming and choking up the channel of said stream and causing the water to flow out and over the top of the levee, onto and over the plaintiff's crops, your verdict must be for the defendant; provided, you further find

from the evidence that piling alleged to have been left by the defendant under said bridge did not contribute to produce such damming and choking of said stream."

The following, among others, were refused for defendant:

" 6. The law did not require the defendant in constructing its bridge over Sugar creek to foresee that levees would in future be required or built upon the banks of said stream, so as to increase the volume of water beyond that flowing naturally within the banks of said stream and raise the height of the flood level of the water thereof above the top of the natural banks of said stream, and the court instructs the jury that the defendant can not be found guilty of any negligence which will authorize any recovery in this case on account of failing to take any precaution which would prevent an overflow from such increased volume of water."

"8. If the jury find from the evidence that in consequence of the construction of the levees on the natural banks of said stream, the waters of said stream were increased in volume and raised above the natural banks and higher than the flood level in said stream would have been but for said levees, and thereby the logs, trees and other drift floating down in said stream caught and lodged against the chords of said bridge and dammed up said stream, the verdict must be for the defendant."

*Strong & Mosman,* for appellant.

(1) The defendant's first instruction in the nature of a demurrer to the case, made by the evidence, should have been given. (*a*) Plaintiff claimed the right to submit the case to the jury on the question whether the old stubs of piling had "concurred and combined" with the extraordinary storm in producing the injury. The defendant, while not conceding that piles were left

sticking up under the bridge, contends that even if that were the case, the rule announced in plaintiff's contention is not applicable to facts in the case at bar. That doctrine is only applicable in a case where the defendant's negligence is itself a real producing cause—an active agency, co-operating energetically to cause the damage. *Rogers v. Railroad,* 67 Cal. 607; *Railroad v. Sulphur Springs,* 96 Pa. St. 65; *Phillips v. Railroad,* 64 Wis. 435; *Inhabitants of China v. Southwick,* 12 Me. 240; *Gillespie v. Railroad,* 6 Mo. App. 554; *Henry v. Railroad,* 76 Mo. 293; 53 Cal. 56; *Givens v. Van Studdeford,* 86 Mo. 159. (*b*) The only fact shown here in evidence is the mere presence, the bare existence of an agency ( to-wit, the stubs of the piling), which might, or might not, have been an operative cause in producing the disaster. It only furnishes a possible explanation of the cause of the damming of the creek. *Sheldon v. Railroad,* 29 Barb. 228; *Muddle v. Stride,* 9 Car. and P. 380. "If it turns out in consideration of a case that the injury may as well be attributed to one cause as the other, the defendant can not be held liable." *Muddle v. Stride, supra; Gilbert v. Dale,* 5 Ad. & El. 543; *Railroad v. Bromley,* 17 Q. B. 372; *Cordell v. Railroad,* 75 N. Y. 330; *Banagan v. Railroad,* 75 Ind. 490; *Woods v. Railroad,* 57 Wis. 201; *Lawrence v. Railroad,* 42 Wis. 322. "Verdicts must have evidence to support them, and they must not be founded on mere theory and supposition." *Fitterling v. Railroad,* 79 Mo. 504–509; *Moore v. Railroad,* 28 Mo. App. 626; *Railroad v. Sherkle,* 97 Pa. St. 450; *Marble v. Worcester,* 4 Gray, 491; *Smith v. Railroad,* 37 Mo. 295; *Kendle v. Boston,* 118 Mass. 234. (*c*) The demurrer should have been sustained in obedience to the maxim, "*volenti non fit injuria.*" *Railroad v. Farrall,* 76 Mo. 191; *Justice v. Town of Lancaster,* 20 Mo. App. 562. No one is permitted to found an action on his own wrong. The act of these parties in constructing

the levees was an actionable nuisance. *McCormick Case*, 70 Mo. 359; *Tillotson v. Smith*, 32 N. H. 90; *Noonan v. Albany*, 79 N. Y. 470. (2) The court erred in giving to the jury instructions numbered 5, 2 and 7, at plaintiff's request. (*a*) There was no evidence on which to base a finding of the facts required of the jury in the fifth instruction and it was unfair and only a partial presentation of the facts of the case. As it purported to cover the whole case, and directed a verdict, it should not have been given. *Thomas v. Babb*, 45 Mo. 384. Again, it was bad because it did not require any connection between the defendant's alleged negligence and the injury, and made defendant responsible for damages not occasioned by its negligence. *Brown v. Plank Road*, 89 Mo. 152; *Harlan v. Railroad*, 65 Mo. 25. (*b*) Plaintiff's second instruction made the defendant liable, although not guilty of any negligence, and required it to anticipate and provide for the waters of an extraordinary storm. *Ellett v. Railroad*, 76 Mo. 515. It is irreconcilably in conflict with the plaintiff's second and the defendant's fifth instructions, and submits to the jury the question as to what would constitute negligence. What would the jury understand by the expression "concurred and combined?" *Gillespie v. Railroad*, 6 Mo. App. 554; *Rogers v. Railroad*, 67 Cal. 607; *Railroad v. School Dist.*, 96 Pa. St. 65; *Phillips v. Railroad*, 64 Wis. 475. (*c*) The plaintiff's seventh instruction was entirely too broad. There is no rule of law which requires of the defendant, or any other citizen, the duty announced in said instruction. (3) The court erred in giving the ninth instruction on its own motion. By it the defendant was required to show affirmatively which one of two different causes was the efficient cause. It must not only show an adequate cause, but affirmatively prove that the cause to which plaintiff attributes the flood was not the real efficient one. This is not the law. *Kendall v. Boston*, 118 Mass.

334; *Muddle v. Stride*, 9 Car. & P. 380; *Gilbert v. Dale*, 5 Ad. & El. 543; *Railroad v. Reeves*, 10 Wall. 176. (4) (*a*) It was error to refuse defendant's sixth instruction. It accurately stated the measure of care due from defendant. (*b*) It was error to refuse the defendant's eighth instruction. There was evidence tending to show that the overflow of the stream was caused by the increased height of the flood level, consequent upon the building of levees on the banks of the stream, and the issue should have been submitted to the jury. (*c*) It was error to refuse the defendant's twelfth and thirteenth instructions. If plaintiff's husband, as a member and director of the levee company, by the unlawful construction of these levees, increased the height of the flood level in the stream, thereby causing the damage, the defendant was not liable. *Mason v. Shrewsberry*, 6 Q. B. L. R. 578, 582; *Newnon v. Albany*, 79 N. Y. 470; *Tillotson v. Smith*, 32 N. H. 90; *Merritt v. Parker*, Coxe (N. J. L.) 460; Wood on Nuisances, secs. 337, 365; *Graves v. Showl*, 47 Pa. St. 53; *Trafford v. Ring*, 1 Barn and Ad. 773 (top p. 726) sec. 352; Wood on Nuisances; *West v. Taylor*, 16 Or. (App. 4, 1887); *Mohr v. Gault*, 10 Wis. 513; *Shamleffer v. Mill Co.*, 18 Kas. 24; *Hoshour v. Railroad*, 60 Mo. 333; *Abbott Case*, 83 Mo. 276; *Railroad v. Glinney*, Illinois case, Nov. 1886. (5) It was error to refuse defendant's third, fourth, fifth and ninth instructions. They correctly declared the law of the case. *Hall v. Railroad*, 74 Mo. 298.

*H. K. White, Joseph P. Grubb, Doniphan & Reed,* and *James W. Coburn,* for respondent.

(1) Though defendant's grantor and predecessor built the old pile bridge which obstructed the creek, defendant continued the nuisance, and is liable. *Tate v. Railroad*, 64 Mo. 149; *Wayland v. Railroad*, 75 Mo. 548; *Beckley v. Skroh*, 19 Mo. App. 75. Defendant,

after the construction of its truss bridge, still left the useless and unneeded piles in the creek, even after notice by Rose that they should be cut off. (2) In the construction of its track, a railroad company is bound to provide, not only for the passage of the volume of the water that may be expected to flow through a particular waterway, but also for the passage of such a torrent as might accumulate there from the occurrence in the vicinity of one of the exceptionably violent storms to which the country is occasionally subject, although no reason existed to expect such a storm would ever happen at that particular place. *Railroad v. Lundon*, 3 Cent. L. J. 417; *Union Trust Co. v. Cuppy*, 26 Kas. 754; *Railroad v. Miller*, 2 Col. 442; *Railroad v. Brown*, 16 Neb. 161; *Railroad v. Hadnot*, 4 S. W. Rep. 138; *Railroad v. Pomeroy*, 3 S. W. Rep. 724. The evidence shows that in 1875 or 1876, and in 1882, there had been heavier rain storms, raising the creek much higher without overflow, thus showing that the rain storm in June, 1885, was not so extraordinary or unusual that it might not reasonably have been expected to occur. *Railroad v. Hadnot*, 4 S. W. Rep. 138; *Railroad v. Holliday*, 65 Tex. 512; *Brink v. This Defendant*, 17 Mo. App. 177. (3) "The latest decisions of this court incline to the opinion that where the negligence of the defendant concurs in and contributes to the injury, he is not exempt from liability on the ground that the immediate damage is occasioned by the act of God or inevitable accident." *Pruitt v. Railroad*, 62 Mo. 540, overruling 10 Wall, 176; *Haney v. City of Kansas*, 94 Mo. 334; *Wolf v. Express Co.*, 43 Mo. 421; *Read v. Railroad*, 60 Mo. 199; *Davis v. Railroad*, 89 Mo. 340; *Michaels v. Railroad*, 30 N. Y. 564. In *Ellet v. Railroad*, 76 Mo. 518, defendant's attorneys in this case made this point and were sustained by the supreme court. (4)

*Brink v. Railroad*, 17 Mo. App. 177, is an almost precisely similar case. It settles all the real questions in this case, and particularly does it obviate defendant's objections to the instructions.

ELLISON, J.—There was a demurrer to the evidence, both at the close of the testimony for plaintiff and at the close of the case. It appears that the creek was about fifty feet wide and eight or ten miles long, extending from up in the bluffs and wooded hills westerly, down through the bottom into a lake. The railroad track at this point may be said to run north and south, and the stream northeast and southwest.

There was a public road crossing the stream by means of a county bridge something more than one-half mile up the creek east of the railroad bridge.

After the construction of the railroad, contiguous land-owners built a levee on either side of the creek, about fifty feet from either side, which, including the width of the stream, enclosed a space of about one hundred and fifty feet in width. These were narrowed at the railroad bridge to near eighty feet. The levee on the northwest side of the stream, ended at the public road where it crosses the county bridge; but on the other side, the levee was turned at about a right angle to the creek and was run across to the bluff nearly a quarter of a mile distant. There was testimony which tended to show that when defendant took down the first bridge and built the present one, the piles, upon which the first one stood, were cut off so as to stick up from two to five feet above the natural bed of the stream, some of them reaching up within four or five feet of the lower chord of the bridge.

On the morning of June 3, shortly before daylight, there was a terrific rainstorm in this vicinity. In my opinion the testimony established, conclusively, that it was an unprecedented storm. Witnesses stated that there had been other storms in which there was as much

rainfall, but they were of a day or more in length, while this one had come and gone in one or two hours. Counsel designated it as a "cloud burst" or "water spout," the water falling upon the hill country along the creek, pouring rapidly down the hillsides and carrying into the creek, fences, brush, saw logs, whole trees forty to sixty feet long with all their roots and branches, together with every sort of lighter drift, such as cornstalks, etc.

The valley of the creek in the hills, a mile or two above the bridge, was covered with the flood in some places a quarter of a mile wide. Emerging from the hills into the level Missouri bottom, it spread out and poured along the foot-hill slope over a very large territory on both sides of the creek, including plaintiff's field mentioned in her petition. Half a mile east of the railroad bridge and up the stream near the hills, was the highway bridge. Still further up the stream east of the highway bridge, a body of water, one quarter of a mile wide, escaped from the creek, ran south and west across the highway and over the top of a levee three feet high, into plaintiff's field, carrying with it, and depositing upon her field, great quantities of heavy driftwood, including saw logs twenty inches to two feet in diameter. Below the highway bridge and thence to the railroad bridge, a distance of more than half a mile, the creek rose above and overflowed the levee on the south side of the creek, nearly five feet higher than the natural banks, and thence flowed southward over plaintiff's field.

One of her witnesses, an eye witness of this scene, says water was running over the levee nearly all the space between the two bridges.

Persons on horseback endeavoring to pass along the highway southward from the county bridge could not do so. The water in the road was deep enough to swim a horse. Water was up to the floor of the county

bridge and drift would come down the stream on and against the top of the bridge.

A large tree floated down with its roots and branches and lodged against the county bridge, and soon stopped a pile of drift entending seventy-five to one hundred yards up the creek. On this twenty-five or thirty men with saws and axes walked and worked. They had to tear up the bridge floor in order to get the drift loose. One man got four hundred rails out of this drift pile.

Within the recollection of no witness, many of whom testified that they had lived in the vicinity for many years, had such a quantity of water fallen in the same length of time as fell at this time.

It was testified by several witnesses that the creek channel was not capable of containing one-third of the waters of this flood seeking outlet at that time.

There was testimony however, on the part of the plaintiff, which tended to show that but for the piling which had been left protruding above the bed of the stream under the railroad bridge, the drift would have passed the bridge and that such piling would have obstructed the drift of an ordinary storm. Quite a portion of the population turned out that morning and a number, including some of defendant's employes, were at the railroad bridge endeavoring to prevent the drift from damming the creek at that point. From these, testimony was elicited which would warrant the jury in finding that the piling was at least one of the efficient causes of the choking and damming of the stream at that point and that such damming caused the water to break over the levee between the two bridges.

The demurrer includes within its scope the question whether, notwithstanding the overflow caused by the railroad bridge, plaintiff's crops would not have been destroyed by the overflow caused solely by the drift at points above the railroad bridge; and whether the severity and suddenness of the storm and the body of

the water, would not have overcome the capacity of the stream and destroyed the crops, even though the obstruction at the railroad bridge had not occurred. We have concluded, though with much hesitation, that there was enough evidence to make this a question for the jury. We will therefore not interfere with the ruling of the trial court in refusing the demurrer. Though this phase of the case should be placed appropriately before the jury.

Instruction number 2, in effect, directed the jury to find for plaintiff, notwithstanding the storm may have been unprecedented, if they believed that defendant's "negligence concurred and combined with said extraordinary storm in causing plaintiff's injury." It was in this respect misleading. It is perhaps taken from the language of the court in *Pruitt v. Railroad*, 62 Mo. 540. This is general language used in stating an abstract rule of law. Such abstract statements are dangerous material for an instruction. The negligence, even in case of carriers, must be a co-operative cause of the loss. *Davis v. Railroad*, 89 Mo. 340. The rule as to carriers invokes a stricter principle of law than is applicable here.

For the much greater reason therefore, the negligence, in a case like the present, must have been such as to have effectively caused the destruction of the crops. It must have been an efficient cause though it need not have been the sole cause.

When the act of God is the cause of a loss, it is not enough, under this rule of law, to show that defendant has been guilty of negligence, the case must go further and show that such negligence was an active agent in bringing about the loss, without which agency, the loss would not have occurred.

The instruction does not embody these requisites, it does not make it necessary for the jury to find that the negligence was an efficient or direct cause of the overflow, proximately bringing it about.

It leaves the jury free to indulge in any fanciful connection between the negligence and the loss, however remote it might be. As was remarked in the case of *Railroad v. School District*, 96 Pa. St. 65, a pebble in the stream would in some small degree impede the course of the water, yet it would scarcely be held to be an efficient cause. Our views on this subject are so aptly expressed in that case that we take from it the following:

"We apprehend that the concurring negligence, which, when combined with the act of God, produces the injury, must be such as is in itself a real producing cause of the injury, and not a merely fanciful, or speculative or microscopic negligence which may not have been in the least degree the cause of the injury. In other words, if the act of God in the particular case was of such an overwhelming and destructive character as by its own force, and independently of the particular negligence alleged or shown, to produce the injury, there would be no liability though there was some negligence in the maintenance of the particular structure. To create a liability, it must have required the combined effect of the act of God and the concurring negligence to produce the injury. The present case affords a fair illustration of the reason for this distinction. The defendant's witnesses testified that the force and volume of the water were so very great that it would have required one hundred and twenty such culverts to pass it off.

"Hence, if the three culverts were in the most perfect condition, they would not at all have prevented the injury, and, therefore, the fact that they were somewhat obstructed might be quite immaterial."

In *Rogers v. Railroad*, 67 Cal. 607, an instruction was given by the trial court which directed the jury that if, in addition to the act of God, the intervention of man takes place, co-operating with it and commingling

with it to any extent, however slight, and an injury then results, the injury is to be ascribed, not to the act of God, but to the act of man; and that therefore if the negligence of a human being concurs with the act of God and causes an injury, the party thus negligent would be responsible therefor. On appeal to the supreme court such instruction was held erroneous. This much for the effect of the negligence. The character, or kind, or degree of the negligence (if it may be so written), thus commingling with the act of God, must be such as shows a want of ordinary care ; *Haney v. City of Kansas*, 94 Mo. 334; *Gillespie v. Railroad*, 6 Mo. App. 554. Defendant is not liable for a loss resulting from extraordinary and unprecedented storms. *Flori v. City of St. Louis*, 69 Mo. 341 ; *Ellet v. Railroad*, 76 Mo. 518. Such would be denominated as the "act of God," from which no liability ensues, on the principle that no man shall be responsible for that which no man can control. *Rogers v. Railroad, supra.*

Defendant is only required to take precautions against ordinary storms. If, therefore, defendant has exercised ordinary prudence and care in replacing its bridge, considering the character and nature of the stream, the lay of the territory, which it drained, and of the ordinary storms which occur in that vicinity, it has not been guilty of that character of negligence which is held to bring about a liability by commingling with the act of God.

"Beyond this, prudent circumspection can not be expected to look, and there is, therefore, no liability for extraordinary floods, those unexpected visitations whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict, wrong no one." In this case, unlike most cases in which the act of God is invoked as a defense, the act of negligence did not occur during the storm, or after it was

over. Therefore the act is only made a negligent act by comparison with the duty which defendant owed before the storm. It was not defendant's duty to foresee and prepare against an unprecedented storm, in other words, it was not defendant's duty to prepare against the "act of God." Its duty was only to prepare against ordinary storms.

If it did not do this, it was negligence. The instruction should therefore inform the jury of the nature of the concurring negligence which would render defendant liable. For even though the dam and overflow would not have occurred at the railroad bridge if there had been no pilings left there, defendant is still not liable unless the piling would have caused a dam and overflow from an ordinary storm. And since, in our opinion, the testimony shows this to have been an unprecedented storm, it necessarily follows from the foregoing, that the important question on this branch of the case is, not so much whether the water and drift, which passed down the stream, was obstructed by the piling, but would the piling have obstructed the water and drift of an ordinary storm such as occurs in that vicinity, so as to cause the overflow and destruction of the crop, and plaintiff's fifth instruction should conform to this view.

There is another reason why the judgment ought not to stand. It is shown that the stream was leveed by citizens who were interested in adjoining lands, that such levees had the effect of widening the stream to about three times its original width, but that when the levee on the south or southeast side of the stream reached the county bridge, it was turned at a right angle and run across the valley to the bluff, thus, perhaps, diverting into the stream, in a body, water which would have found other outlets, or spread out over adjacent territory. The defendant can not be held

to have foreseen this, when it built its bridge, and cannot be held liable for an injury or loss caused by thus diverting the water in a body into a stream which had not theretofore received it. Such question should be put to the jury by an appropriate instruction. *Newnon v. Albany*, 79 N. Y. 470; *Tilletson v. Smith*, 32 N. H. 90. So, if by the construction of the levees, the waters of the creek were increased in volume and raised higher than the flood level thereof and thereby the stream became dammed and choked up by drift catching onto the bridge proper, the defendant is not liable and its eighth instruction should not have been refused, and so for the same reason its sixth refused instruction should have been given. They would seem properly to follow what was declared in the eighth instruction given by the court of its own motion. The ninth instruction given at the instance of the court should not have been given. It is so worded and constructed as to be misunderstood by the jury.

The instructions given for defendant were substantially correct, but for the reasons, foregoing, the judgment will be reversed and the cause remanded. The other judges concur.