## CHICAGO, R. I. & P. RY. CO. v. TURNER.

No. 18783. Opinion Filed Dec. 17, 1929.

Rehearing Denied Feb. 18, 1930.

Commissioners' Opinion, Division No. 2.

M. R. Bleakmore, John Barry, and A. T. Boys, for plaintiff in error.

A. G. Morrison, A. L. Morrison, and R. R. Bell, for defendant in error.

DIFFENDAFFER, C. The defendant in error, hereinafter referred to as plaintiff, commenced this action against plaintiff in error, hereinafter referred to as defendant, to recover for damages alleged to have been caused by the negligence of defendant in the construction and maintenance of its roadbed across the bottom land adjacent to the North Canadian river, and its bridge across said river near El Reno in Canadian county, whereby plaintiff's farm was overflown by the flood waters of said river in October, 1923. The allegations of the petition in this record are:

"That said defendant has constructed and maintained across the first and second bottoms a high railway embankment or dam for the use of its railway track with insufficient openings to permit the usual surface waters and flood waters of the North Canadian river to pass through the said openings, and has left an insufficient opening where the said road crosses the said river to permit the flood waters of the said North Canadian river to pass through, so that the waters are held back and caused to overflow the said first and second bottoms and to be held upon adjacent lands for a considerable length of time."

"That on or about the month of October,

1923, there came a heavy rain and flood and by reason of the said faulty construction of the said railway embankment due to the negligence and carelessness of the defendant in constructing and maintaining the same, and due to the insufficient opening left where the said railway track was constructed and maintained over the said North Canadian river, the said surface and flood waters were unable to pass through the said openings and were caused to spread out upon the plaintiff's said 80 acres of land to a depth of above five or six feet, and to destroy his growing crops, destroy the stand of alfalfa, damage his household furniture, his house and buildings, farm machinery and automobile, grain and wheat and corn in crib."

The amended answer of defendant is a general denial, and further pleads:

"Answering further, and for a separate defense, defendant alleges and states that if the property of the said plaintiff was damaged by the overflowing of waters from the North Canadian river, said overflow and damage were caused solely by an act of God in this, to wit; that at the time of the said injury and damage caused by the said overflow, there was an unprecedented rain, cloudburst and flood, greater in volume, extent and severity than had ever been known in this country, which fell and precipitated such a volume of water over the area of the land draining into the North Canadian river as to cause any injury and damage the plaintiff may have suffered, and that the said injury and damage done to the plaintiff were due entirely to such unprecedented rain, cloudburst and flood, which was an act of God."

Plaintiff replied by general denial, and the issues as thus joined were tried to a jury resulting in a verdict and judgment for plaintiff in the sum of $1,000. Defendant after unsuccessful motion for new trial brings this appeal.

Plaintiff's land consists of 80 acres located in what is termed the "second or high bottom lands" about three-fourths of a mile, at the nearest point, north and west from the railroad bridge over the river. The railroad runs slightly west of north from the bridge and across plaintiff's farm. About 20 acres at the northeast corner of the farm lies on the east side of the railroad track. The course of the river is generally from northwest to southeast. At a point about one mile north and two miles west of plaintiff's land, the course of the stream turns and runs almost directly south for about two miles where it again turns to the southeast to the bridge. The distance by the course of the stream, from the point where the river turns south to the railroad bridge is about five miles. Plaintiff's house, barn and outbuildings are on the west side of the railroad near the north line of his land.

The record discloses that by the flood of October, 193, plaintiff's land was completely inundated. The depth of the water ranged from two to six feet over plaintiff's land. His buildings, crops, grain, hay and machinery were damaged, and some damage was done to the soil by sediment, etc. The jury fixed the amount of plaintiff's damage at $1,000 and it is conceded that there was sufficient evidence to justify this amount perhaps more.

The defendant offered many witnesses whose testimony tended strongly to establish that the flood of October, 1923, was an unprecedented one. The record affirmatively shows that the land of plaintiff was never before overflowed from the river since the settlement of the country in 1889. The testimony of all the witnesses except one was that the flood of June, 1923, was higher than any flood known before that date, and that the flood of October, 1923, was about four or five feet higher than that of June of that year. Some eleven witnesses testified to this effect. These witnesses had lived in the community for from 14 to 50 years. One witness, Robert Woods, testified that he had lived in the vicinity since about 1870 or 1871, and remembered a flood that occurred in 1877, during which the river rose to about the same height as in June or October, 1923. But he was of the opinion that the June flood of 1923 was the greater of the 1923 floods and the 1877 flood was about the same as the highest flood of 1923. It was agreed by every one, except perhaps Woods, that the flood of June, 1923, was not high enough to overflow plaintiff's land. Thus the evidence discloses that since the construction of the railroad in about 1887, no flood, ordinary or otherwise, had caused plaintiff's land to overflow until the flood of October, 1923. In other words, the bridges, etc., of defendant had always been sufficient to carry the flood waters of the river since the construction of the railroad until the flood under consideration occurred.

There was also much evidence introduced, which appears to be uncontradicted, tending to show that in the October, 1923, flood, the river overflowed its banks and broke into the second bottom at the point where the river turned south some two and one-half miles north and west of plaintiff's farm and about five miles, by the course of the river, up stream from the railroad bridge

and rushing down along a depression in the second bottom, overflowed plaintiff's land, and that this rather than any faulty construction and maintenance of the railroad bridge and embankment, was the real cause of the damage to plaintiff's property.

At the close of plaintiff's evidence, defendant demurred thereto, the demurrer was overruled, and at the close of all the evidence, defendant moved for a directed verdict, which motion was overruled. The first assignment of error is based upon this ruling.

This presents the question of whether or not there is any competent evidence reasonably tending to establish the allegations of plaintiff's petition, as to the negligence of defendant; that is, was there any evidence which, together with all the inferences that could be logically drawn therefrom, would reasonably show any breach of duty which defendant owed to plaintiff?

What then were the precautions which defendant in the circumstances was required to take? That is, what duty was owing to plaintiff by defendant? And what breach of that duty, if any, was shown by the evidence

In Kansas City, P. & G. R. Co. v. Williams, 3 Ind. T. Rep. 352, 58 S. W. 570, the court, in defining the duty of the railroad company, quoted with approval the following from Coleman v. Railroad Co., 36 Mo. App. 476.

" 'Defendant is only required to take precautions against ordinary storms. If, therefore, defendant had exercised ordinary prudence and care in replacing its bridge, considering the character and nature of the stream, the lay of the territory which it drained, and of the ordinary storms which occur in that vicinity, it had not been guilty of that character of negligence which is held to bring about a liability by commingling with the act of God.''

And following this, in Coleman v. Railroad Co., supra, the following is quoted with approval:

"Beyond this, prudent circumspection cannot be expected to look, and there is, therefore, no liability for extraordinary floods, those unexpected visitations whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict, wrong no one."

In Emery v. Raleigh & Gastain R. R. Co., 102 N. C. 209, 11 Am. St. Rep. 727, the rule is stated as follows:

"It is the duty of railroad company to so construct its culverts that they will carry off the water of the streams, over which they are constructed, under all ordinary circumstances likely to occur in the usual course of nature, even to the extent of such heavy rains as are ordinarily expected, though of but occasional occurrence, but it is not bound to so construct them as to carry off overflows which result from extraordinary and unusual rainfalls."

In Eagan v. Central Ry. Co. (Vt.) 69 Atl. 752, 16 L. R. A. (N. S.) 928, a case strikingly similar in many respects to the instant case, it was held:

"A railway company is not liable for injuries to the property of a riparian owner by water thrown thereon by the overflow of the stream, the water of which cannot. because of a storm so extraordinary in character that it has had but one precedent in 40 years, escape through its culvert."

There, as here, the testimony given by the witnesses living in that general locality was nearly all to the effect that they never before saw a rain so hard, nor a flood there of such magnitude. There, as here, one witness, who had lived in the vicinity for 40 years, testified to remembering a flood in October, 1869 (some 33 years before 1902, the date of the flood involved in the action) and that the water was then higher in the brook than he had ever seen it before or since, and another witness testified he had lived in the vicinity for 47 years, and remembered the flood of 1869, and also the one in 1902, but was unable to state which of the two floods was the larger. It was there said:

"We think it clear that the damages suffered by the plaintiff were proximately due, directly and exclusively, to natural causes without human intervention, which could not have been prevented by any amount of foresight, pains, and care reasonably to be expected. In other words, the sole proximate cause of the injury was an act of God for which the defendant is not responsible."

Here the witness Woods testified as follows:

"Q. When did you come to Oklahoma? A. About 1870 '71; '71. Q. 1871? A. Yes, sir. Q. Have you been acquainted with the North Canadian river? A. Oh, I reckon. Q. Have you been acquainted with the place and acquainted with the North Canadian river since that time? A. Pretty well acquainted. Q. Do you remember a flood of 1877? A. Yes, sir. Q. You also remember a flood of October, 1923? A. Yes, sir. Q. You saw both of those floods, did you? A. Yes, sir. Q. How do they compare with each other? A. Well, sir, I

can't tell; it was just about the same standing. Q. Just about the same? A. Yes, sir. Q. The flood of 1877 was just about the same as that of 1923, was it? A. About the same. Q. And October, '23? A. Yes, sir. Mr. Morrison. Take the witness."

Cross-examination by Mr. Barry:

"Q. How did they compare with the June flood of 1923? A. I can't hear you. Q. How did that 1877 compare with the June flood of 1923? A. This last big raise? Q. Yes? A. About the same. Q. About the same; and as you remember it, it was about the same as the October flood of 1923; about the same? A. Yes, sir, the big flood was about the same; I don't remember what dates it was in. Q. Well, do you remember in 1923, there were two floods, the one occurring in June and one in October? A. The one in June was the biggest, wasn't it? Q. Was that the way you remember it? A. Yes."

The testimony of all other witnesses was to the effect that in the flood of June, 1923, the water was higher than ever before, and that in the flood of October, 1923 (the one on account of which the damage occurred) the water was from four to five feet higher than in the June flood.

One of these witnesses testified that he had lived in that vicinity since 1877, one since 1872, and one since 1875; eight others testified to the same effect, their knowledge ranging from 1879 to 1913.

From the whole record herein, it conclusively appears that the damages suffered by plaintiff were due directly and exclusively to natural causes which could not have been prevented by any amount of foresight, pains, and care reasonably to be expected.

The reasons for thus holding appear much stronger than the case of Eagan v. Central Ry. Co., supra. In that case, it was said:

"The fact that the evidence shows that in the fall of 1869, there was a storm which so raised the stream that the original culvert was insufficient for the water to pass through, and that the land in question now leased by the plaintiff was then flooded, can make no difference with the result; for the undisputed evidence shows the flood at that time to have been of the same extraordinary character. Consequently, the incapacity of the culvert on that occasion had no tendency to show that the culvert built in 1893 was insufficient in times of ordinary high water; and, though constructed with knowledge of the extraordinary high water in 1869, nothing more was required."

The defendant constructed its roadbed across the bottoms, and the first bridge over the North Canadian river in 1887. The evidence fails to show clearly that the flood of 1877, of which one witness testifies, was greater than that of July, 1923. But, if it was, it must have been in the same extraordinary character as that of October, 1923. Forty-six years intervened between the two floods, whereas in the Eagan Case but 33 years intervened. For 36 years after the construction of the roadbed and bridge, no damage whatever occurred to plaintiff's land by overflow of the stream.

The court instructed the jury that before a verdict could be returned against the defendant, the jury must find by a preponderance of the evidence that the damage and injury complained of by defendant (plaintiff?) was caused by the negligence of the defendant railway company, and would not have occurred but for the negligence of the railway company. But in this case, like every case based upon negligence, the court was not warranted in submitting the issue of negligence to the jury, without some competent evidence tending to support the charge of negligence. In this case, however, we are forced to the conclusion that there was no such evidence.

There is some evidence tending to show that certain tiles placed under defendant's roadbed for the purpose of draining off surface water had been permitted to become clogged or stopped up, but there is no evidence whatever to show that the damage was in any way caused by surface water, or that the water in the stream was in any way increased or augmented by surface water from rain falling in that vicinity at the time of flood.

In Amerman et al. v. State for the use Bromide Crushed Rock Co., 111 Okla. 174, 239 Pac. 146, it was held:

"The court may direct the jury to return a verdict where the undisputed facts are of such conclusive character that the court in its sound judicial discretion would be compelled to set aside the verdict returned in opposition to it."

And in A., T. & S. F. Ry. Co. v. Wyer, 8 Fed. (2nd.) 30, the duty of the trial court in passing upon a motion for a directed verdict is held to be:

"To direct a verdict at the close of the evidence * * * which the evidence is undisputed; and * * * which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion would set aside a verdict in opposition to it."

From the record, we think it clearly ap-

pears that the evidence wholly fails to show that defendant had not taken precautions against all ordinary flood conditions. There was, therefore, no evidence to support the allegations of negligence, and defendant's motion for a directed verdict should have been sustained.

Having reached this conclusion, we deem it unnecessary to consider the other assignments of error.

For the reasons stated, the judgment should be reversed and the cause remanded, with directions to enter judgment for defendant.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 59 L. R. A. 863; 37 L. R. A. (N. S.) 311; L. R. A. 1916F, 1295; 22 R. C. L. p. 894; 3 R. C. L. Supp. p. 1292; 7 R. C. L. Supp. p. 758; (2) 22 R. C. L. p. 899. See "Trial," 38 Cyc. p. 1579, n. 45. "Waters," 40 Cyc. p. 574, n. 57, 59; p. 575, n. 60.